Wilson G. ROGERS and Cynthia Reed, Co–Personal Representative of the Estate of Brian Rogers, Deceased, Wilson G. Rogers, Cynthia Reed, and Casey Lynn Gilbert, a Minor, By Her Mother, Violet J. Gilbert, Plaintiffs,

v.

CITY OF PORT HURON, a municipal corporation, Port Huron Police Department, William Corbett, Individually and as Chief of Police for the City of Port Huron, Police Officer Reid, Police Officer Malott and John Doe, Supervising Officer of Defendants Reid and Malott, Jointly and Severally, Defendants.

No. 92–CV–75898–DT.

United States District Court, E.D. Michigan, S.D.

Oct. 5, 1993.

Dani K. Liblang, Liblang & Lehro, P.C., Bloomfield Hills, MI, for plaintiffs.

Timothy Young, Cummings, McClorey, Livonia, MI, for defendants.

## OPINION

DUGGAN, District Judge.

Currently before this Court is Defendants'—City of Port Huron, William Corbett, and Police Officers Reid and Malott—motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). This Court has reviewed the briefs submitted in support of and in opposition to defendants' motion and has had the benefit of oral argument held on August 26, 1993.

Plaintiffs commenced an action against defendants alleging that defendants are liable under 42 U.S.C. § 1983 because they violated plaintiffs' decedent's, Brian Rogers, constitutional rights, and further, that defendants are liable under state law pursuant to M.C.L. § 691.1407 for their acts of gross negligence in handling decedent. Defendants assert that they are entitled to dismissal (or partial dismissal) on six grounds: 1) plaintiffs have failed to establish that decedent's constitutional rights were violated by the actions of defendants; 2) the individual police officers are entitled to qualified immunity; 3) the supervisory officer is entitled to dismissal because his subordinates have no liability; 4) plaintiffs have failed to establish facts that would render the City of Port Huron liable for failure to train or implement a policy regarding the treatment of intoxicated citizens; 5) plaintiff cannot bring a claim for loss of consortium under § 1983; and 6) plaintiffs have failed to establish gross negligence under the state law claim.

## BACKGROUND

On May 11, 1991, Brian Rogers ("Decedent" or "Rogers") was observed by bystanders lying unconscious along a roadside. At approximately 1:10 a.m., the Port Huron Police received a report of a "man down" and dispatched Officers Malott and Reid to the area.

Upon their arrival at the scene, Officers Malott and Reid attempted to wake the unconscious Rogers by flashing their lights on him and shaking him for several minutes. It is undisputed that he was lying on the grassy area of the lawn by the curb, and smelled of liquor. Rogers was breathing normally, and did not have any signs of injury. When the officers were unable to wake Rogers, they reached into his pocket and searched his wallet in an attempt to identify him. Rogers neither awakened nor made any significant movement in response to the officers' attempts.

Officers Malott and Reid told the bystanders Terry Lee Monzo and Rhonda Lee Paeth not to take Rogers home, after learning that they did not know Rogers. The officers told the bystanders that Rogers was just intoxicated, and that they were going to "let him sleep it off and we'll [the officers] check on him later." (Paeth Dep at 20–21). The officers would not supply the bystanders with personal information on Rogers because the bystanders had indicated that they did not know Rogers. *See* (Monzo Dep at 121, 133 & 172). The officers did not force the bystanders to leave the scene, and in fact the bystanders were still at the scene when the officers left to attend another call. *See* (Paeth Dep at 60–62, 65); (Monzo Dep at 142).

The officers did not summon or provide medical assistance to Rogers at the scene. Officers Malott and Reid were then advised, by dispatch, to leave the scene and respond to another call. The officers responded and left Rogers lying on the boulevard. It is undisputed that at this time, Rogers was asleep, breathing normally, and not injured. According to both the officers and the bystanders, Rogers did not appear to be in immediate danger.

At approximately 2:00 a.m., the bystanders returned to check on Rogers. This time they found him in the middle of the block with his head on the curb and his body in the street. They observed blood coming from his ear. Monzo then left to call the police. Upon returning to the scene, Monzo found the officers and an ambulance already there.

Rogers was transported by emergency medical services from the scene to Port Huron Hospital. Rogers was subsequently transported by Survival Flight to the University of Michigan Hospital in Ann Arbor. Rogers never regained consciousness and died at the University of Michigan Hospital on May 14, 1991.

Decedent's estate filed suit against these defendants,[1] alleging that the defendant officers violated the decedent's clearly established constitutional rights under the Four-

teenth Amendment through the creation of a special relationship, failure to train, failure to implement a policy, and loss of consortium by not taking him into custody after finding him drunk. Plaintiffs also allege a cause of action under state law for gross negligence under M.C.L. § 691.1407. Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) alleging that no genuine issue of triable fact remains.

### STANDARD OF REVIEW

Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F.Supp. 1458, 1463 (E.D.Mich.1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the complaint must be treated as true. *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir.1986). Rule 12 also states in pertinent part that:

> if, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56

Fed.R.Civ.P. 12(b). Because matters outside the pleadings have been presented by both parties in the instant case, defendants' motion to dismiss shall be treated as a motion for summary judgment.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has stated that the standard the Court must apply in determining whether summary judgment is appropriate is

1. This Court previously granted summary judgment to defendant-Port Huron Police Department and granted partial summary judgment on

the state law claims against Chief William Corbett.

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In *Anderson,* the Supreme Court also noted that "[b]y its very terms, the standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

For the reasons that follow, this Court grants defendants' motion. This Court finds that plaintiffs have, in fact, failed to establish that a genuine issue of material fact exists to preclude judgment for defendants. Accordingly, plaintiffs are not entitled to recover pursuant to either 42 U.S.C. § 1983, or under their state law claim for gross negligence.

### A. § 1983 LIABILITY FOR DEFENDANTS REID AND MALOTT

 Because § 1983 alone does not create substantive rights, a plaintiff must show that he "has been deprived of a right 'secured by the Constitution and laws [of the United States.]'" *Baker v. McCollan,* 443 U.S. 137, 140, 146–47, 99 S.Ct. 2689, 2692, 2695–96, 61 L.Ed.2d 433 (1979). The plaintiff must also show that the deprivation was caused by a person acting under the color of state law. It is undisputed that the police officers in the instant action were acting under the color of

state law. It is the first prong that is in dispute. The claimed constitutional basis for liability in this case is the Fourteenth Amendment's due process clause, which forbids the state to deprive anyone of life, liberty, or property without due process of law.[2]

In order for the plaintiffs to allege a violation under the due process clause, this Court must accept the proposition that the clause includes not only the traditional negative liberties—the right to be let alone, in its various forms—but also certain unenumerated positive liberties, including the right to receive protective services provided by city and state police departments, and the right to receive medical care.

 This argument must fail because the Constitution is a charter of negative rather than positive liberties. *Harris v. McRae,* 448 U.S. 297, 318, 100 S.Ct. 2671, 2688, 65 L.Ed.2d 784 (1980); *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982); *Was v. Young,* 796 F.Supp. 1041, 1044–45 (E.D.Mich.1992). As the *Bowers* court explained, although it "is monstrous if the state fails to protect its residents against such predators ... it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution." 686 F.2d at 618. Thus, the court expressed that "[the Constitution] does not require the federal government or the state to provide services, even so elementary as maintaining law and order." *Bowers,* 686 F.2d at 618. As the Supreme Court observed:

nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the States' power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means ... **As a gen-**

2. The clause states in pertinent part that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law."

eral matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195–97, 109 S.Ct. 998, 1003–04, 103 L.Ed.2d 249 (1989) (citations omitted) (emphasis added). The purpose of the Constitution was to protect people from the State, not to ensure that the State protected them from each other. *Id.* at 196, 109 S.Ct. at 1003.[3] As the *DeShaney* Court explained, "[t]he Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes." *Id.*[4]

*1. The "Special Relationship" Exception*

■ Plaintiffs first argue that a "special relationship" existed between decedent and defendants such that defendants were under a constitutional duty to protect decedent. The Supreme Court has recognized that in some situations, even though an individual is not officially in state custody, he is in "functional custody" such that the state is constitutionally required to provide protective services.[5] The Supreme Court initially explored the parameters of the "functional custody" exception in *DeShaney.*

In *DeShaney*, the guardian ad litem of a minor child brought suit against state social workers who allegedly failed to remove him from his father's custody even though they had recorded multiple incidents of physical abuse and had temporarily placed the minor in the custody of the juvenile court. The Supreme Court declined to impose a constitutional affirmative duty of care and protec-

tion for the minor upon the State, emphasizing that the beatings occurred while the child was in the custody of a private actor, his father, and not while he was in the custody of the state. The Court rejected the argument that the minor was in "functional custody" because of a "special relationship" that somehow existed between the child and the State because the State might well have been aware of the dangers he was exposed to because "it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney*, 489 U.S. at 201, 109 S.Ct. at 1006. The fact that the State had previously taken temporary custody of the child did not alter the Court's analysis, "for when it returned him to his father's custody, it placed him in no worse position than that in which he could not have acted at all ... the State does not become a permanent guarantor of an individual's safety by having once offered him shelter." *Id.* (emphasis added).

Plaintiffs' reliance on *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720 (3rd Cir.1989), is misplaced. In *Stoneking* the court held that § 1983 liability might exist where a student was sexually assaulted by a teacher because the student's attendance in school is required by state law and thus a student may be considered to be in "custody" during school hours. A contrary result was reached where a student was injured during voluntary extra curricular activities at school. *Reeves v. Besonen*, 754 F.Supp. 1135 (E.D.Mich.1991).

Courts have been willing to extend the state custody exception beyond actual incarceration or involuntary institutionalization

---

**3.** *Accord, Jackson v. City of Joliet*, 715 F.2d 1200, 1203–04 (7th Cir.1983), *cert. denied*, 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984) ("the concept of liberty in the Fourth Amendment does not include a right to basic services, whether competently provided or otherwise.").

**4.** The Court stated that although the State may have acquired a duty under state tort law to provide adequate protection, the Due Process Clause of the Fourteenth Amendment does not transform every tort committed by a state actor into a constitutional violation. *DeShaney*, 489 U.S. at 202, 109 S.Ct. at 1006.

**5.** The Supreme Court has stated that there is a constitutional duty to provide personal security

when a person is in state custody, either through institutionalization or incarceration, because in this situation, an individual's liberty is restrained to such a degree that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs. *See e.g. Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). As the Court explained, this "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his behalf." *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005.

only when there is some kind of physical restraint by the state which triggered the affirmative constitutional duty of care and protection. Thus, if a person's attendance at an event or area is voluntary, and not in the state's compulsion, and the person was not physically placed there by the state, the person cannot be considered to be in "functional custody." This Court finds that decedent was not in "functional custody" in the instant case. It is undisputed that Decedent's inebriation was self-inflicted. Additionally, Officers Reid and Malott did not force Decedent onto the lawn—he arrived there on his own, and was not forced to stay in that area.

### § 1983 Requires More Than a Special Relationship

■ Even if the police officer has a "special relationship" with the victim, imposing a duty to affirmatively act, the existence of the special relationship in itself is not sufficient to establish liability under § 1983. *See e.g. Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Gilchrist v. City of Livonia*, 599 F.Supp 260, 263 (E.D.Mich. 1984). The "plaintiff must also show that the police acted with 'deliberate indifference;' there is no liability for merely negligent nonfeasance." *Gilchrist*, 599 F.Supp. at 263. The *Gilchrist* court relied in part on the Seventh Circuit's decision in *Jamison v. McCurrie*, 565 F.2d 483 (7th Cir.1977), where the court stated that:

> there is no cause of action for mere negligence on the part of the police officers. . . . The plaintiff must show that their misbehavior was either intentional or in reckless disregard of his constitutional rights . . . [although] police nonfeasance, if purposeful, might be the basis for a constitutional tort claim.

565 F.2d at 486; 599 F.Supp. at 263. As the Sixth Circuit explained:

> We acknowledge that the term "gross negligence" evades easy definition. In our view, a person may be said to act in such a way as to trigger a section 1983 claim if he intentionally does something unreasonable with disregard to a known risk of a risk so obvious that he must be assumed to have been aware of it, and a magnitude such

that it is highly probable that harm will follow.

*Nishiyama v. Dickson County*, 814 F.2d 277, 282 (6th Cir.1987).

■ Based on the foregoing analysis, neither the Officer's "nonaction" during the first "man down" call nor their refusal to give the bystanders Decedent's address violated Decedent's due process rights. Officers Reid's and Malott's conduct does not rise to the level of gross negligence, but at most, constitutes mere negligence. Such conduct suggests no more than a failure to measure up to the conduct of a reasonable person. The Due Process Clause is simply not implicated by a negligent act.

### 2. "Creation of Danger" Exception

■ Plaintiffs additionally argue that even if a special relationship did not exist, defendants still had a constitutional duty to act because defendants created or exacerbated an existing danger either by limiting Decedent's freedom to act or by limiting Decedent's access to help from other sources. (Plaintiffs' Brief at 7). Although it is not clear how large a role the state must play in the creation of danger before it assumes a corresponding constitutional duty to protect, the courts have narrowly construed this exception. As the Eighth Circuit stated, "[t]o date, the Supreme Court has found such a situation only in a custodial setting." *Freeman v. Ferguson*, 911 F.2d 52, 55 (8th Cir. 1990). The court suggested that the "[DeShaney] analysis established the possibility that a constitutional duty to protect . . . may exist in a non-custodial setting if the state has taken affirmative action which increases the individual's danger of, or vulnerability to, such violence beyond the level it would have been at absent state action." *Id.*

The narrowness of the "creation of danger" exception is illustrated in *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696 (9th Cir.1990). This case suggests that mere awareness of a danger to the victim, without more, will not be sufficient to create a constitutional duty on the part of the state. In *Balistreri*, the Ninth Circuit held that the Due Process Clause did not require the police to protect the plaintiff, a victim of an

alleged beating by her estranged husband. The victim had apparently repeatedly complained to the police. The court found no special relationship, despite the plaintiff's claims that the police knew of her plight and affirmatively committed to protect her when the state issued a restraining order. The court, relying in part on *DeShaney*, concluded that "the state's knowledge of DeShaney's plight and its expressions of intent to help him were no greater than its knowledge of Balistreri's plight and its expressions of intent to help her." *Balistreri*, 901 F.2d at 700. **"This is the lesson of *DeShaney*: that law enforcement officers have authority to act does not imply that they have any constitutional duty to act."** *McKee v. City of Rockwall*, 877 F.2d 409, 414 (5th Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 727, 107 L.Ed.2d 746 (1990) (emphasis added).

The Sixth Circuit has addressed the issue of police officer's liability under § 1983 for leaving two minor children unattended on the road while they brought the adult driver to the police station. *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir.1993). Because the Sixth Circuit had not addressed whether abandonment by state or local actors constitutes a deprivation of the interest in personal security, it looked to the decisions of other circuits. *Id.* at 1337–39.[6] There is, however, disagreement among the circuits that have addressed this issue, as well as disagreement within one of the circuits.[7] Thus, the Sixth Circuit held that at the time of the plaintiff's arrest, there was no clearly established right

to personal security forbidding the police from abandoning passengers. *Id.* at 1339. "Therefore, the contours of the right, if there is such a right, were not sufficiently clear so that a reasonable officer would have known that leaving the children in the parking lot violated that right." *Id.*

In the instant case, in light of the aforementioned case law and the facts as alleged in the pleadings and at oral argument, this Court finds that the "creation of danger" exception does not apply.

*3. "Preventing Rescue" Exception*

Plaintiffs further contend that even if defendants' "nonaction" is not actionable, defendants nevertheless can be held liable based on Officers Reid's and Malott's actions in preventing private citizens from rescuing decedent. From a review of the following cases, this Court does not believe that a police officer's failure to rescue, or a police officer's actions preventing others from rescuing a victim, violates a "clearly established constitutional right." There is no applicable Supreme Court precedent on this issue, and it appears that the Sixth Circuit has not fully addressed this issue.

Plaintiffs cite *Ross v. United States*, 910 F.2d 1422 (7th Cir.1990) in support of their argument. The *Ross* case, however, is distinguishable from the case at bar. In *Ross*, the rescuers were already preparing to begin the rescue efforts when the police arrived and ordered them to desist.[8] The officer

---

**6.** In the absence of Supreme Court precedent, or Circuit precedent, a court may rely on the law of other circuits, in an "extraordinary case" in which the decisions of the other courts "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Walton*, 995 F.2d at 1337 (*quoting Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992)).

**7.** *See e.g., Hilliard v. City & County of Denver*, 930 F.2d 1516 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991); *Courson v. McMillian*, 939 F.2d 1479 (11th Cir.

1991); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir. 1985); *White v. Rochford*, 592 F.2d 381 (7th Cir.1979).

**8.** In this case, unlike the rescuers in *Ross*, the passerbys were not already in the process of taking the drunk Decedent home. Officers Reid and Malott quite conceivably could have been concerned with the passerby's motive to help a drunk stranger. Additionally, when the Officers arrived at 1:10 a.m., Decedent, while visibly intoxicated, was not in the process of dying. Nothing suggests that the Officers' intent in leaving the drunk Decedent on the lawn was that he be killed or wounded; or even that there was a great likelihood of injury or death.

asserted that county policy prohibited the private rescuers to engage in rescues. The officer threatened to arrest them if they did not desist. Further, he positioned his boat so that the scuba divers could not enter the water. *Ross,* 910 F.2d at 1424. The officer was aware "of a known and significant risk of death, [but] consciously chose a course of action that ignored the risk." 910 F.2d at 1433 (citation omitted). The lesson of *Ross* is that an officer cannot "arbitrarily assert [his] power so as to cut short a person's life." *Id.* at 1433. In the present case, Decedent was not in danger of losing his life when the passersby offered to take him home. The decedent in *Ross* was; he was drowning. Furthermore, the uncontroverted deposition testimony of the passersby indicates that Officers Reid and Malott did not force the passersby to leave or otherwise prevent "rescue attempts," other than refusing to reveal Decedent's address to individuals who admittedly did not know Decedent. *See e.g.,* (Paeth Dep at 60–62, 65); (Monzo Dep at 121, 133, 142 & 172). The Officers cannot be faulted for refusing to give the bystanders Decedent's address. They simply had no way of ascertaining whether bystanders' intentions were virtuous or pernicious. This Court finds that Officers Reid and Malott did not arbitrarily assert their power to cut Decedent's life short.

Furthermore, plaintiffs cannot establish that Officers Reid and Malott violated a clear constitutional right in preventing private citizens from rescuing Decedent in light of conflicting opinions within the circuits addressing this issue. In *Andrews v. Wilkins,* 934 F.2d 1267 (D.C.Cir.1991), the court held that the police actions of not attempting to rescue the drowning decedent and interfering with private efforts to rescue him was not a violation of decedent's constitutional rights. The court stressed that the decision was appropriate because the police did not know the rescuer's level of safety training or skills, and they were concerned with decedent's bizarre behavior. *Id.* at 1271.

This Court also finds *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983) instructive. In *Jackson,* the decedents' car burst into flames, trapping them inside. A police officer chanced on the scene, but he did not attempt to determine whether the car was occupied, and did not call an ambulance. After calling the fire department, he returned to the road and directed traffic away from the scene of the accident. The court held that the officer's actions were negligent, but did not rise to the level of a constitutional deprivation. First, the court asserted that plaintiff's due process claim—that decedents were deprived of their right to protective services—failed on an analysis of the Fourteenth Amendment. Next, the court rejected plaintiff's second claim; that decedents were deprived of their lives without due process of law under the Fourteenth Amendment. The court stated that:

> [t]his argument would succeed if the defendants had killed the plaintiff's decedents in circumstances making the killing an intentional tort ... the concern [with the Fourteenth Amendment] is with the use of state-created power to kill rather than the state's failing to prevent death ... to accept plaintiffs' syllogism would be to impose by another route a duty to provide basic services. Here the state acted promptly but, it is alleged, ineffectually.

715 F.2d at 1204 (emphasis added). Accordingly, the court concluded that "[i]f the defendants deprived the plaintiffs' decedents of anything it was of some right of competent rescue services. But, as we have been at pains to stress, there is no such right in the Fourteenth Amendment." *Id.* at 1205 (emphasis added).

Officers Malott and Reid did not have an affirmative constitutional duty to protect individuals from harm caused by third persons unless a special relationship exists, and no relationship existed in this case. *See e.g. DeShaney,* 489 U.S. at 196, 109 S.Ct. at 1003; *Walton,* 995 F.2d at 1336–37. Thus, although it may be "monstrous if the state fails to protect its residents against such predators, [being murdered by criminals or madmen] it does not violate the due process clause of the Fourteenth Amendment...." *Bowers v. De Vito,* 686 F.2d 616, 618 (7th Cir.1982) (citations omitted). The Officers' nonaction did nothing to alter the danger faced by Decedent; and the Officers did not

create the danger. *See generally, Jackson v. City of Joliet*, 715 F.2d 1200, 1204 (7th Cir. 1983); *Murphy v. Gibson*, 765 F.2d 145 (6th Cir.1985) (TABLE) (text in Westlaw). The right protected by § 1983 is limited to the right not to be harmed, or placed in danger, by a state actor. *DeShaney, supra;* and *Jackson, supra.* The Officers did not intrude upon and alter the personal security of Decedent. Moreover, the Officers' actions cannot be said to have prevented bystander help. Although the Officers declined to give the bystanders personal information regarding Decedent when they learned that the bystanders did not know him, they did not force the bystanders to leave. Moreover, the Officers did not have the authority to release Decedent into the hands of strangers who could conceivably put Decedent in a worse position; the bystanders could have robbed or otherwise harmed Decedent, or simply decided afterwards that they did not want to bring Decedent to his house. Additionally, the Officers indicated that they would return to check on Decedent. The plaintiffs rely on a series of cases where the state placed an individual in a hostile environment and thus removed the individual's normal protections. The state is not a guarantor of personal safety. Although defendants' conduct was not exemplary, based on the facts of this case, such conduct does not create a § 1983 cause of action.

## B. IMMUNITY OF OFFICERS REID AND MALOTT

 Based on the foregoing discussion, this Court is satisfied that defendants did not violate a clearly established constitutional duty. Accordingly, Officers Reid and Malott are entitled to the protection of qualified immunity. Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For a constitutional right to be clearly established, "the laws must be clear in regard to the official's particular actions in the particular situation." *Walton v. City of*

*Southfield,* 995 F.2d at 1335–36 (quoting *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991)). The Supreme Court has defined "clearly established" to mean that

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted). Accordingly, the particular conduct of the official must fall clearly within the area protected by the constitutional right, such that a reasonable official would have known that his or her conduct violated the constitutional right. *Long*, 929 F.2d at 1115. The standard employed is "objective reasonableness," and it focuses on whether defendants reasonably could have thought that their actions did not violate plaintiff's constitutional rights. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988) (*citing Anderson*, 483 U.S. at 640, 107 S.Ct. at 3038).

The Sixth Circuit stated that the court must "look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits" to determine whether a constitutional right is clearly established. *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992); *Walton*, 995 F.2d at 1336. As counseled by the Sixth Circuit, it is "only in extraordinary circumstances that we look beyond Supreme Court and Sixth Circuit precedent to find 'clearly established law.'" *Walton, supra,* at 1336. Furthermore,

> **For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind**

**of the reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.**

*Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir.1988) (emphasis added).

As this Court discussed above in Section A, defendants were not under a constitutional duty to provide aid to Decedent, and thus defendants did not violate a clearly established constitutional right. Accordingly, this Court holds that Officers Reid and Malott are entitled to the protection of qualified immunity.

### C. IMMUNITY OF CHIEF WILLIAM CORBETT

 Plaintiffs allege that Chief Corbett negligently supervised Officers Reid and Malott. In order to find a supervisor liable, a plaintiff must allege that the supervisors condoned, encouraged, or participated in the alleged misconduct. *Birrell v. Brown,* 867 F.2d 956, 959 (6th Cir.1989); *Bennett v. Batchik,* 743 F.Supp. 1245 (E.D.Mich.1990), *aff'd,* 936 F.2d 572 (6th Cir.1991) (TABLE). Liability under 42 U.S.C. § 1983 will not be imposed solely on the basis of respondeat superior and must be based on more than a right to control employees. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845, 83 L.Ed.2d 93 (1984). It follows that because Officers Reid and Malott did not violate Decedent's constitutional rights, Chief Corbett cannot be held liable for encouraging conduct that is not itself actionable under § 1983. Moreover, even assuming that Officers Reid's and Malott's actions could establish a violation of decedent's rights, plaintiffs do not allege that Corbett implicitly authorized, approved, or knowingly acquiesced to their conduct. Plaintiffs simply fail to allege sufficient personal involvement.

### D. § 1983 CLAIM AGAINST THE CITY OF PORT HURON

 Whether the City of Port Huron can be held liable under 42 U.S.C. § 1983 depends on an analysis of *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny. In *Monell,* the United States Supreme Court ruled that a municipality may not be held liable under § 1983 on a respondeat superior theory. 436 U.S. at 691–694, 98 S.Ct. at 2036–37. Rather, § 1983 liability may attach to a municipality only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694, 98 S.Ct. at 2037–38. Since this Court has concluded that Officers Reid and Malott did not violate Decedent's constitutional rights, it follows that no policy or practice of the City of Port Huron could have caused any violation of Decedent's constitutional rights.

Furthermore, this Court does not believe that plaintiff has pointed to the existence of any policy or practice of the City of Port Huron or the Port Huron Police Department which could be deemed to be the cause of any violation of Decedent's constitutional rights. At best, the City's policies or practices may have caused the officers to act as they did, i.e. to leave Decedent in the condition he was in to answer another call; but such policy or practice did not directly cause Decedent's injuries. Decedent's injuries were caused by acts of someone other than Officers Reid and Malott. *See Jones v. City of Carlisle, et al.,* 3 F.3d 945, 949 (6th Cir., 1993) (Case No. 92–6103) (quoting *Janan v. Trammell,* 785 F.2d 557, 560 (6th Cir.1986)). In sum, plaintiffs have failed to raise a genuine issue of material fact that a policy or custom deprived plaintiffs' Decedent of a constitutional right and was the "moving force behind plaintiff's injuries." *Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). In the present action, defendant officers were acting in accordance with the unwritten policy or custom of the Port Huron Police Department as it existed in May 1991—to follow federal, state and local laws with respect to incapacitated persons. (Defendants' Exhibit 9 at p. 7). Specifically, the Port Huron police officers operated under the mandates of M.C.L. § 333.6501, which specifies that an individual who appears to be incapacitated in a public place shall be taken

into protective custody, but not arrested, by a law enforcement officer.[9] An individual is "incapacitated" within the meaning of M.C.L. § 333.6501 if the "individual, as a result of the use of alcohol, is unconscious or has his or her mental or physical functioning so impaired that he or she either poses an **immediate and substantial danger to his or her own health and safety or is endangering the health or safety of the public**." M.C.L. § 333.6104(3) (emphasis added).

Even if this Court were to conclude that the City of Port Huron had a policy directing employees to stand idly by and not rescue drunks that may be harmed by their own actions, absent a constitutional duty to provide rescue services, the City cannot be held liable. As discussed earlier, the government's failure to provide essential services does not violate the Constitution. *See e.g. DeShaney,* 489 U.S. 189, 195–203, 109 S.Ct. 998, 1003–07; *Jones,* 3 F.3d at 950. The plaintiffs' allegations of municipal policy cannot surmount the main obstacle to their claim: the City simply had no constitutional obligation to provide protective services to Decedent.

### E. LOSS OF CONSORTIUM/FAMILIAL ASSOCIATION

Since this Court has concluded that defendants are not liable for any violation of plaintiffs' Decedent's constitutional rights, there can be no claim for loss of consortium/familial association. Therefore, this claim shall be dismissed.

**9.** M.C.L. § 333.6501 in pertinent part provides that:

> An individual who appears to be incapacitated shall be taken into protective custody by a law enforcement officer and taken to ... an emergency medical service.
> M.C.L. § 333.6501(1). A person placed in protective custody is not placed under arrest. *See* M.C.L. § 333.6501(3).

**10.** The statute reads in pertinent part:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency ... shall be immune from tort liability for

### F. STATE LAW GROSS NEGLIGENCE CLAIM

Finally, defendants contend that they are entitled to immunity on the state law claim because they meet the requirements of M.C.L. § 691.1407. The Michigan Legislature has provided statutory governmental immunity under M.C.L. § 691.1407 for causes of action arising after July 7, 1986. This statute provides that governmental agencies engaged in a governmental function are immune from tort liability and that officers and employees of government agencies are immune from liability if they believe they are acting within the scope of their authority, their agency is performing a governmental function, and they are not grossly negligent. § 691.1407(1 & 2), § 691.1401(f).[10] It is undisputed that the first two elements for immunity have been met; at the time of the incident, the Officers were acting within the scope of their authority in furtherance of a governmental function. At issue is whether Officers Reid's and Malott's conduct constituted "gross negligence" as defined in the statute.

In this Court's opinion, the Officers' conduct did not constitute gross negligence. At worst, the Officers' conduct can be characterized as an error in judgment, which may be negligence, but in this Court's view, it does not constitute gross negligence. It cannot be stated that the Officers' conduct was "so reckless as to demonstrate a substantial lack of concern for whether injury results."

Additionally, plaintiffs cannot satisfy their burden of establishing that Officers Malott's and Reid's conduct was "the" proximate

> injuries to persons ... caused by the officer, employee or member while in the course of employment ... while acting on behalf of a governmental agency if all of the following are met:
> (a) The officer, employee ... is acting or reasonably believes he or she is acting within the scope of his or her authority.
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> (c) The officer's, employee's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

cause of Decedent's injuries. The Michigan Court of Appeals recently construed the language of the statute, and concluded that in order to prevail, a plaintiff cannot assert that a defendant's conduct was *a* proximate cause of the plaintiff's injury, but rather, must establish that the defendant's conduct was the· proximate cause of injury. *Dedes v. South Lyon Schools*, 199 Mich.App. 385, 392–93, 502 N.W.2d 720 (1993).[11] The court explained that:

> The 1986 amendment of the governmental liability act, 1986 PA 175, rewrote MCL 691.1407; MSA 3.996(107). The prior statute provided simply that 'all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function.' We must presume that the Legislature, when it chose to elaborate the conditions under which governmental immunity would apply, was aware of the effect of its decision. **The distinction between "the proximate cause" and "a proximate cause" was already well recognized in Michigan by the time 1986 PA 175 was enacted ... Furthermore, this Court has explicitly recognized the difference between definite and indefinite articles.**

*Dedes*, 199 Mich.App. at 392–93, 502 N.W.2d 720 (internal citations omitted) (emphasis added).

The decedent and his sister in *Dedes* were walking along the shoulder of the road waiting for their school bus. An auto driven by a private party struck the children, killing decedent and injuring his sister. The plaintiffs argued that defendants' placement of the bus stop on the shoulder of the road was the proximate cause of their injuries. The Court stated that even if the school district was negligent in its placement of the bus stop, its negligence could not have· been a proximate cause of the injuries, much less the proximate cause. *Id.* at 391, 502 N.W.2d 720. Moreover, the court held that the cause of action against the bus driver also failed be-

cause the private party's negligence in swerving off the road and hitting the children was an intervening cause of their injuries, and accordingly, the bus driver's alleged instructions that the children wait at the shoulder of the road for the bus, even if proven, would not be the proximate cause of their injuries. *Id.* at 392, 502 N.W.2d 720. Accordingly, the *Dedes* court concluded that although defendants' actions could have been considered as one of several causes of the injury, because of the intervening and superseding acts of another that directly caused the injury, defendant's negligence could not be considered "the" proximate cause, and summary disposition was proper. *Id.* at 393, 502 N.W.2d 720.

Similarly, neither Officers Reid's nor Malott's conduct can be construed as "the" proximate cause of decedent's injuries. Neither Officer created the situation that caused Decedent to be lying on someone's lawn in an intoxicated state. He was already lying on the front lawn, by the curb, when the Officers responded to the initial "man down" call at 1:10 a.m. In the Officers' judgment, Decedent was not in immediate danger to himself or others, so they responded to another call. Officers Reid and Malott cannot be faulted for not allowing the bystanders, who were admittedly strangers to Decedent, to take Decedent home. The Officers had no way of determining whether the bystanders' intentions were virtuous or pernicious. They simply did not have the authority to release decedent into the custody of complete strangers. When they responded to the second "man down" call at 2:00 a.m., Decedent was in another location on the street. The officers observed that blood was trickling from his ear, and called for emergency medical help. There was simply no connection between the Officers' conduct and Decedents' injuries. Decedent's injuries were either caused by a private citizen, or were self-inflicted. Accordingly, because the Officers' conduct was not "the" proximate cause of Decedent's injuries, dismissal of plaintiffs'

---

**11.** The court "acknowledge[d] plaintiff's frustration with an amended statute that makes proving tort claims against governmental employees more difficult than bringing similar actions against other individuals. Nonetheless, we are bound to apply the plain language of the statute." *Dedes*, 199 Mich.App. at 392, 502 N.W.2d 720.

state law gross negligence claim is appropriate.

## CONCLUSION

For all the aforementioned reasons, this Court will grant defendants' motion in its entirety and plaintiffs' complaint thus will be dismissed. An Order consistent with this Opinion will enter forthwith.