**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0268n.06
Filed: April 17, 2006

**No. 05-1481**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JERRI SCHACK, Personal Representative for the Estate of Lawrence Schack, Deceased, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| CITY OF TAYLOR; POLICE OFFICER MICHOWSKI; POLICE OFFICER SHREWSBURG; POLICE OFFICER MICHAEL ZACHARY; CADET YESTA; CADET JONES; CADET MICHALIK; CADET JAMES PILCHECK; CADET BRIAN KREGER, | ) ) ) ) ) ) ) ) | |
| Defendants-Appellants. | ) ) | |

Before: SUHRHEINRICH, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge. Plaintiff, representing the estate of Lawrence Schack, alleges that Defendants deliberately ignored a substantial risk of serious harm and acted with gross negligence when they placed Schack in a detoxification cell where he fell, hit his head, and suffered an internal brain hemorrhage that led to his death. Because Defendants' actions do not amount to a Fourteenth Amendment violation or gross negligence, we reverse the district court's denial of Defendants' motion for summary judgment, and remand for entry of judgment in favor of Defendants.

I

Officers of the Defendant City of Taylor's police department arrested Schack for disorderly intoxication. Prior to the arrest, Schack refused offers of medical assistance from EMT personnel on the scene. When the officers arrived at the police station with Schack in custody, they turned him over to Cadets Krieger and Pilchack for processing. As the cadets led Schack into the booking room, he lost his balance twice and had to be supported by the cadets and officers. Due to Schack's intoxication, as well as some alleged belligerence, the processing cadets decided not to process Schack at that time, but rather to place him in a detoxification cell until he "sober[ed] up a little bit." The cell was monitored via video camera and visible to the officers on duty. Shortly after being placed in the cell, as recorded on the videotape but unbeknownst to the cadets, Schack stood up from the cell's bench, fell over, and hit his head on a concrete wall. As later determined, this impact caused internal bleeding near Schack's brain.

In the hours succeeding the fall, Schack repositioned himself in the cell at least twice, and the cadets also repositioned him at least twice when checking on him. Throughout the night, the cadets observed Schack sleeping and heard him "snoring."[1] Cadet Krieger testified that he spoke with Schack during the night and asked him if everything was okay, to which Schack responded in the affirmative. Cadet Lyson testified that, around noon the next day, he observed Schack sleeping and snoring, although Plaintiff's medical expert opined that Schack was probably dead by about

---

[1]Plaintiff claims that what Defendants thought to be Schack's snoring was actually his lungs filling with fluid, but Plaintiff does not dispute that Defendants believed Schack to be snoring.

10:15 a.m. In any event, at 12:15 p.m., Lyson observed that Schack was not breathing and appeared discolored. He summoned emergency personnel who transported Schack to the hospital where Schack was pronounced dead.

Schack's estate sued a number of defendants, including the appellants here: the City of Taylor; arresting officers Michowski and Shrewsbury; Cadets Krieger and Pilchak, who put Schack in the detoxification cell; and Cadet Yesta, who was on duty through the night. Plaintiff alleged that the City failed to adequately train its police force and that the individual defendants violated the Fourteenth Amendment through deliberate indifference to Schack's safety. Plaintiff also brought various state-law claims.

Defendants moved for summary judgment, claiming qualified immunity shielded them from the Fourteenth Amendment claim and the failure-to-train claim. The district court denied the motion, finding a genuine issue of material fact as to whether they acted with deliberate indifference. The court also denied Defendants' motion for summary judgment on Plaintiff's state-law gross-negligence claim, but granted their motion with respect to Plaintiff's other claims.

II

We review the denial of summary judgment on qualified immunity grounds de novo, *Scicluna v. Wells*, 345 F.3d 441, 444 (6th Cir. 2003), reviewing only the legal issue of whether the facts, taken in the light most favorable to the plaintiff, demonstrate that the defendants violated

clearly-established law. *See Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 602 (6th Cir. 2005). To determine whether qualified immunity shields Defendants from liability, we first determine whether Defendants violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, we then determine whether the right was so clearly established that a reasonable officer would have known that his actions violated that right. *Id.* at 201-02.

## A. Plaintiff's Fourteenth Amendment Claims

Pretrial detainees have a right under the Fourteenth Amendment's Due Process Clause analogous to a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003). A detainee may claim a Fourteenth Amendment violation based on a state actor's "failure to prevent harm" in the conditions of confinement—that is, the failure to take reasonable measures for the safety of the detainee. *See Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994) (describing Eighth Amendment guarantees). Such a claim requires a showing that the state actor knew that there was an "excessive risk" to the detainee's health or safety, also described as a "substantial risk of serious harm." *Id.* at 837 ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

A claim for failure to prevent harm will succeed where prison officials act with "deliberate indifference." *Farmer*, 511 U.S. at 828. Deliberate indifference is akin to criminal recklessness. *Weaver*, 340 F.3d at 410; *see Farmer*, 511 U.S. at 837. It is "a very high standard of culpability, exceeding gross negligence." *Ross v. Duggan*, 402 F.3d 575, 590 n.7 (6th Cir. 2004) (quotation omitted). The test for deliberate indifference is both an objective and subjective one: the detainee must be subjected to a substantial risk of serious harm, and the prison official must actually know of and disregard the risk. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

Plaintiff alleged that Defendants subjected Schack to a substantial risk of serious harm in deliberate indifference to his health and safety. At oral argument, Plaintiff's counsel identified the culpable conduct as Defendants' decision to place an extremely inebriated Schack in the detoxification cell.[2]

The district court concluded that Defendants acted with deliberate indifference. The court found evidence that Defendants actually knew of a substantial risk because Cadet Krieger testified that he recognized an increased risk that a drunk person could fall. The court also found that there was a risk of serious harm because the cell had a concrete and cinder-block wall.

---

[2]It was unclear from Plaintiff's complaint and appellate brief whether Plaintiff's claim centered on Defendants' putting Schack in the cell, their failure to discover Schack's internal wounds through closer monitoring, or both. Thus counsel was asked at oral argument to clarify Plaintiff's claim. We note that claims against Defendant Yesta, whose shift began well after Schack had already been placed in the detoxification cell, cannot survive under Plaintiff's theory.

Defendants argue that the district court's conclusion that Schack was "so intoxicated that he could not stand or walk on his own" was contrary to the cadets' undisputed deposition testimony. As Defendants note, the cadets testified that they escorted Schack into the detoxification cell because of his belligerence. But the cadets also admitted that they had some concern that Schack could fall due to his intoxication, and the police station video depicts Schack walking unsteadily. Thus, construing the facts in the light most favorable to the Plaintiff, Schack's ability to stand or walk on his own was limited.

But the cadets did not leave Schack *standing* or *walking* in the detox cell; they sat Schack on a bench in the cell, and he remained sitting as they left the cell. Even assuming the cadets recognized the risk that after they left the cell Schack might try to stand and might fall, recognition of an *increased* risk of Schack *falling* is not equivalent to recognition of a *substantial* risk of *serious* harm. Nothing indicates that the officers actually foresaw an injury of this magnitude and maintained their course of conduct in defiance of the risk of harm.

Even if Plaintiff could meet the subjective component of deliberate indifference by showing that the officers recognized a substantial risk to Schack, Plaintiff fails to meet the objective component of the test. Schack in fact sustained a serious injury, but this does not necessarily indicate a substantial risk of such an injury. In conditions-of-confinement challenges like this one, a claimant must establish an "excessive risk." *See Farmer*, 511 U.S. at 837; *Jarriett v. Wilson*, 162 Fed. Appx. 394, 402 (6th Cir. 2005). "Additionally, the prisoner must demonstrate that the risk is

one which society deems so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (quotation and emphasis omitted); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) ("Ultimately, to establish the objective element of an Eight[h] Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency.").

Placing an intoxicated man, even a highly intoxicated man,[3] in a detoxification cell while awaiting booking does not violate contemporary standards of decency. *See generally Samples v. Logan County*, No. C2-03-847, 2006 WL 39265, at \*1 & n.2 (S.D. Ohio Jan. 6, 2006) (noting without apparent surprise that the claimant was placed in a holding cell because "[i]f an inmate is too intoxicated to participate meaningfully in this booking process, the booking officer gives the inmate time to sober up"); *Weaver*, 340 F.3d at 404 (noting that officers put a man in a cell where the man was mumbling and had to be assisted by two jailers into the jail); *Ross v. Meyers*, 883 F.2d 486, 487 (6th Cir. 1989) (noting, in description of facts, that DWI arrestee was placed in holding cell). Additionally, the district court, in granting Defendants' motion for summary judgment on Plaintiff's claims of intentional infliction of emotional distress, held that there was no evidence of conduct "so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency." Perhaps the Taylor detoxification cell could have been better arranged to guard against falls, but Defendants' placing Schack in the cell did not violate contemporary standards of decency.

---

[3]We note that Plaintiff has not alleged that Schack exhibited symptoms of any alcohol-related ailment requiring immediate medical attention; rather, Plaintiff quarrels only with Defendants' decision in light of the risk of Schack's falling.

Thus Defendants' actions do not run afoul of the Eighth Amendment prohibition against cruel and unusual punishment, as applied to Schack via the Fourteenth Amendment.

Turning to the City of Taylor's appeal, we note that, although the denial of the City's summary judgment motion is not appealable as a collateral order, we may exercise pendent jurisdiction where, as here, "the appealable and non-appealable issues are inextricably intertwined." *Tucker v. City of Richmond*, 388 F.3d 216, 224 (6th Cir. 2004) (quotation omitted) (exercising pendent jurisdiction over city's appeal where the court found no constitutional violation by individual defendants). The city cannot be liable to Plaintiff "[i]f no constitutional violation by the individual defendants is established." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001). In light of our holding that the individual defendants did not act with deliberate indifference, Plaintiff's constitutional claims against the City fail.

## B. Plaintiff's State-Law Claims

Under Michigan law, government agents are immune from liability for most torts committed "in the course of employment or service." Mich. Comp. Laws § 691.1407(2). But if the agent's conduct amounts to "gross negligence," immunity is lost. *Id.* Plaintiff claims that Defendants acted with gross negligence "in not providing medical care and placing Mr. Schack in the cell when an injury was highly likely, and after the injury did occur, allowing him to remain there without attention until he died." The district court found a genuine issue of material fact on Plaintiff's gross negligence claim against the individual defendants "[i]n light of the fact . . . that a genuine issue of

fact has been established relative to the Fourteenth Amendment due process constitutional violation."

### 1. Appealability

Plaintiff maintains that Defendants' appeal of the denial of summary judgment on the state-law claim is not properly before us. In determining whether we may hear an appeal based on state-law immunity, we determine whether the collateral order doctrine applies—that is, whether "the state has extended an underlying substantive right to the defendant official to be free from the burdens of litigation." *Marrical v. Detroit News, Inc.*, 805 F.2d 169, 172 (6th Cir. 1986); *see also Walton v. City of Southfield*, 995 F.2d 1331, 1343 (6th Cir. 1993). Although we held in *Marrical* and *Walton* that Michigan law did not extend such a right to government officials, a 2002 amendment to the Michigan court rules cloaked government officials with immunity from the burdens of litigation for official conduct that is not grossly negligent. *See Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 511-12 (6th Cir. 2005); *see also* Mich. Court Rules § 7.202(6)(a)(v) (providing that, for purposes of appeal, the term "final order" includes "[a]n order denying governmental immunity to a governmental party"). We will therefore consider Defendants' appeal.

### 2. Gross Negligence

To overcome governmental immunity, Plaintiff must offer evidence that Defendants acted with gross negligence. Gross negligence is "conduct so reckless as to demonstrate a substantial lack

of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). The Michigan

Court of Appeals has described gross negligence as "almost a willful disregard of precautions or

measures to attend to safety and a singular disregard for substantial risks." *Tarlea v. Crabtree*, 687

N.W.2d 333, 339 (Mich. Ct. App. 2004). Although gross negligence is generally an issue of fact,

it is appropriate for summary judgment where reasonable minds could not differ. *Tarlea*, 867

N.W.2d at 338.

Two analogous cases help to define the contours of Michigan gross-negligence law. In

*Conley v. Bobzean*, No. 257276, 2006 WL 73630 (Mich. Ct. App. Jan. 12, 2006), the Michigan

Court of Appeals addressed a claim that officers acted with gross negligence toward an intoxicated

man. The man had been involved in a "physical altercation" when the officers arrived on the scene.

*Id.* at *1. Rather than taking the intoxicated man into custody, the officers drove him to a different

location as requested by the man's companion. *Id.* at *2-*3. At the new location, the man became

entangled in another altercation and was killed. *Id.* at *3. The court held that, although the officers

could have done more to decrease the risk, "no reasonable person could conclude that defendants'

conduct was grossly negligent." *Id.*

In *Rogers v. City of Port Huron*, 833 F. Supp. 1212 (E.D. Mich. 1993), officers were called

to assist an unconscious man on the side of the road. *Id.* at 1214. Unable to wake the man, the

officers noted that he was breathing normally, that he did not show any signs of injury, and that he

smelled of alcohol. *Id.* at 1214. The officers told bystanders that the man was intoxicated and

needed to sleep it off, and that they would check on him later. *Id.* at 1215. The officers left the scene to respond to another call, but were called back later when bystanders found the man injured and lying partly in the street. *Id.* The man was taken to the hospital where he died. *Id.* Applying Michigan law, the court held:

> [T]he Officers' conduct did not constitute gross negligence. At worst, the Officers' conduct can be characterized as an error in judgment, which may be negligence . . . . It cannot be stated that the Officers' conduct was so reckless as to demonstrate a substantial lack of concern for whether injury results.

*Id.* at 1223 (quotation omitted).

Here, no reasonable person could find Defendants grossly negligent in leaving Schack sitting in the detoxification cell. A reasonable person, even having anticipated Schack's attempting to stand, would not likely have anticipated the degree of harm caused, and nothing about Schack's placement in the cell indicates "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). Defendants failed to secure medical treatment for Schack, but they had no reason to suspect that he was injured. They frequently saw him sleeping and heard what they believed to be snoring, and they had a reasonable basis to believe that he would be sleeping very heavily, given his drunken state. Plaintiff does not contend that Schack exhibited any visible signs of injury. Even if we assume Defendants acted negligently in placing Schack in the cell or in not obtaining medical treatment, this does not preclude summary judgment on Plaintiff's gross-negligence claims. *Maiden v. Rozwood*, 597 N.W.2d 817,

824 (Mich. 1999). No reasonable juror could find that Defendants acted with gross negligence, and we conclude that the district court erred in denying summary judgment on this claim.

III

We reverse the district court's denial of summary judgment and remand the case for entry of summary judgment in favor of Defendants.