NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0713n.06
Filed: October 3, 2007

**No. 06-2339**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TODD KELLERMAN, Personal Representative of the Estate of JAMIE KELLERMAN, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| DUANE SIMPSON, R.N., and SANDRA SHUBNELL, R.N., | ) ) ) | |
| Defendants-Appellants, | ) ) | |
| and | ) ) | |
| JACK HUNT, M.D., | ) ) | |
| Defendant. | ) | |

_____

BEFORE: KEITH and GRIFFIN, Circuit Judges; and VAN TATENHOVE, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendants Duane Simpson and Sandra Shubnell appeal the district court's denial of their motion for summary judgment. Simpson and Shubnell argue that the district court erred in denying them qualified immunity from plaintiff's Eighth Amendment and state gross negligence claims. Plaintiff Todd Kellerman, personal representative for the estate of Jamie Kellerman, argues that this

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

court lacks jurisdiction to consider defendants' appeal and, in the alternative, that the district court held correctly that a genuine issue of material fact exists as to whether defendants provided constitutionally defective medical care. For the reasons set forth below, we affirm the district court's denial of qualified immunity with respect to Kellerman's state law claim against Shubnell, reverse the district court's denial of qualified immunity with respect to Kellerman's Eighth Amendment claim against Shubnell, and reverse the district court's denial of qualified immunity with respect to Kellerman's state law and Eighth Amendment claims against Simpson.

I.

Because this case comes to us following the denial of qualified immunity on defendants' motion for summary judgment, we construe the facts in the light most favorable to the plaintiff. *Peete v. Metro Gov't*, 486 F.3d 217, 219 (6th Cir. 2007).

Jamie Kellerman was incarcerated at the Kalamazoo County Jail in December 2002, when she developed a blister on the fifth toe of her left foot. On December 3, Kellerman met with Dr. Jack Hunt, a treating physician at the jail, concerning an unrelated infection that she had previously identified in a medical care request ("kite"). She asked Hunt to examine her left foot, which "had become swollen, red and/or purplish in color and very painful." Dr. Hunt refused, informing Kellerman that on her kite she had only identified the unrelated infection, and explaining that in order to receive care on her foot, she would need to submit another kite. Kellerman claims that she continued to seek an examination of her left foot from defendant Nurse Sandra Shubnell, but Nurse Shubnell refused, allegedly stating "I don't want to look at your nasty foot."

The next day, defendant Nurse Duane Simpson examined Kellerman's foot. Nurse Simpson noted a "small red area" that appeared to be a blister at the base of Kellerman's small toe, measuring approximately three millimeters round. Simpson advised Kellerman not to pick at the blister and to clean it thoroughly and gave Kellerman a band-aid to cover the blister.

On December 6, Nurse Shubnell examined Kellerman's toe. Shubnell noted that the redness on her toe had spread to the back of her leg. In response, Shubnell placed Kellerman on the doctor's call list. Dr. Hunt then examined Kellerman's foot later that morning and diagnosed her with cellulitis of the fifth toe of her left foot. Dr. Hunt prescribed 875 milligrams of Augmentin, an antibiotic, to be given every twelve hours for one week. In addition, Kellerman was transferred to an individual cell to prevent any further spreading of the infection.

The prescribed Augmentin arrived at the jail via overnight mail on December 7, and Nurse Shubnell administered the medicine to Kellerman immediately. Kellerman received a second dose at eight o'clock that evening. Around midnight that night, Nurse Simpson examined Kellerman after she complained of extreme pain. Simpson noted increased edema on Kellerman's foot and rapidly progressing redness, and arranged for Kellerman's transfer to the Borgess Hospital emergency room for evaluation. While hospitalized, Kellerman was treated for septic shock and adult respiratory distress syndrome. After three surgeries, surgeons were able to remove the necrotic skin and subcutaneous tissue surrounding Kellerman's toe.

On February 14, 2005, Kellerman filed a complaint in the United States District Court for the Western District of Michigan against nurses Shubnell and Simpson and Dr. Hunt, alleging cruel

and unusual punishment in contravention of the Eighth Amendment and gross negligence under Michigan state law. During the pendency of this action, Kellerman passed away, and her personal representative, Todd Kellerman, was substituted as the plaintiff. On June 20, 2005, defendant Hunt moved for summary judgment. The district court denied Hunt's motion, and he did not appeal that order. On July 6, 2006, defendants Shubnell and Simpson moved jointly for summary judgment, which the district court denied on September 16, 2006. This timely appeal followed.

II.

As an initial matter, Kellerman argues that we lack jurisdiction to consider defendants' appeal from the district court's denial of summary judgment. Title 28 U.S.C. § 1291 limits this court's jurisdiction to "final decisions of the district courts of the United States . . . ." A district court's denial of qualified immunity is an appealable final decision pursuant to 28 U.S.C. § 1291, but only "to the extent that it turns on an issue of law." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). That the district court denied defendants' motion for summary judgment on the grounds that genuine issues of material fact exist does not preclude us from exercising jurisdiction over defendants' appeal. Rather, as we have recognized, "'*regardless of the district court's reasons* for denying qualified immunity, we may exercise jurisdiction over the [defendants'] appeal to the extent it raises questions of law.'" *Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999) (en banc) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996)); *see also Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

Because we lack jurisdiction over factual issues on appeal from the denial of qualified immunity, the appellant must essentially "concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998). Defendants have explicitly done so, stating: "for purposes of [this appeal], Defendants . . . [are] not contesting Plaintiff's version of the facts. The facts *as alleged by Plaintiff* are insufficient to establish deliberate indifference on the part of the Defendants" and clarifying that their position is "that the facts as alleged by the Plaintiff are insufficient to establish deliberate indifference or unreasonable conduct on the part of the Defendants." Moreover, Kellerman has not identified any disputed facts upon which defendants rely in their appeal. Thus, we conclude that this court has jurisdiction to consider defendants' appeal with respect to their denial of qualified immunity on plaintiff's Eighth Amendment claim. *See Scott v. Harris*, — U.S. —, 127 S. Ct. 1769, 1775 (2007) (noting that in the exercise of appellate jurisdiction over denial of qualified immunity, courts of appeals usually adopt the plaintiff's version of the facts).

We conclude further that we have jurisdiction to consider defendants' appeal with respect to plaintiff's state law claims of gross negligence. "In a . . . federal question action involving pendent state claims, we must look to state immunity law to determine whether a denial of immunity based on state law is appealable." *Livermore*, 476 F.3d at 407 (citing *Walton v. City of Southfield*, 995 F.2d 1331, 1343 (6th Cir. 1993)). Michigan's governmental tort liability act, MICH. COMP. LAWS §§ 691.1401 *et seq.*, provides government employees with immunity from tort liability for injuries they cause during the course of their employment provided that the employee's conduct

"does not amount to gross negligence that is the proximate cause of the injury or damage." MICH. COMP. LAWS § 691.1407(2)(c).

In *Livermore*, we addressed whether the denial of governmental immunity, as provided in MICH. COMP. LAWS § 691.1407, is an appealable order. We held that it was, reasoning:

> In *Walton*, we held that a defendant could not appeal a district court's denial of governmental immunity pursuant to MICH. COMP. LAWS § 691.1407 because it was not a "final decision" under 28 U.S.C. § 1291. *Id.* at 1344. On June 4, 2002, however, Michigan Court Rule 7.202 was amended to include as a "final order" an "order denying governmental immunity to a governmental party, including a governmental agency, official, or employee . . . ." M.C.R. 7.202(6)(a)(v). Since the 2002 amendment, we have held repeatedly that, because the denial of governmental immunity is now a "final order" providing defendants with an appeal of right to the Michigan Court of Appeals, this court has jurisdiction over interlocutory appeals concerning pendent state law claims of governmental immunity. *See Schack v. City of Taylor*, 177 F. App'x 469, 473-74 (6th Cir. 2006) (unpublished); *Bradley v. City of Ferndale*, 148 F. App'x 499, 511-12 (6th Cir. 2005) (unpublished). We therefore conclude that this court has jurisdiction to consider defendants' interlocutory appeal concerning the denial of qualified immunity to Sgt. Lubelan and Lt. Ellsworth with respect to Livermore's state law claims.

*Livermore*, 476 F.3d at 407-08; *see also Bouggess v. Mattingly*, 482 F.3d 886, 897 (6th Cir. 2007) (exercising jurisdiction over appeal from district court's denial of Kentucky state governmental immunity). Thus, we have jurisdiction to consider defendants' appeal from the district court's denial of their motion for summary judgment concerning plaintiff's state law claim.

III.

Defendants argue that Kellerman's allegations do not amount to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. We agree and reverse the district

court's denial of qualified immunity to defendants Shubnell and Simpson with respect to Kellerman's Eighth Amendment claims.

Qualified immunity protects "governmental officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). In determining whether a government official is entitled to qualified immunity, we must consider two questions: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right"; and (2) "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007). We conduct de novo review of the district court's denial of qualified immunity. *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003).

We must first address whether the facts alleged by plaintiff show that each defendant violated Kellerman's constitutional right to be free from cruel and unusual punishment. As the Supreme Court has held, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary, and wanton infliction of pain proscribed . . . by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotation omitted); *see also Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (noting that "courts have imposed liability upon prison officials only where they are 'so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain'") (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). We have defined a "serious medical need" as "one that has been

diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (internal quotation omitted).

Kellerman has a tough hurdle to overcome in order to succeed in his deliberate indifference claims. Allegations of medical malpractice or negligent medical care are insufficient to show a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 106. Rather, "[t]o establish 'deliberate indifference,' an inmate must show that the alleged mistreatment was 'objectively' serious and that the defendants 'subjectively' ignored the inmate's medical or safety needs." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 829, 834 (1994)). To satisfy the objective prong of the deliberate indifference standard, Kellerman must show that the inmate faced a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. A "showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment" can fulfill this requirement. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (internal quotation omitted); *see also Perez*, 466 F.3d at 424 (observing that the Eleventh Circuit cases upon which *Terrance* relied "note that a showing of 'grossly inadequate care' satisfies only the objective prong of the 'deliberate indifference' standard"). To satisfy the subjective prong, Kellerman must show that the defendant government official is "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the defendant] must also draw the inference." *Farmer*, 511 U.S. at 837. We will address the deliberate indifference standard as it applies to each defendant.

A.    Nurse Simpson

Plaintiff's Eighth Amendment claim with respect to Nurse Simpson suffers from two significant problems.  First, Simpson's interactions with Jamie Kellerman were limited and his treatment was far from "grossly inadequate."  On December 4, he inspected Kellerman's toe, advised her to clean the red area and to leave it alone and gave Kellerman a band-aid to cover up the blister.  On December 8, after Kellerman had taken two doses of her antibiotic, Simpson evaluated Kellerman, noticed that her redness was "progressing rapidly" and arranged for Kellerman to be transferred immediately to the Borgess Hospital emergency room.  Laura Conklin, plaintiff's expert witness retained to opine on the treatment offered by the nurse defendants, was quite limited in her criticism of Nurse Simpson's treatment:

> Q:    And if what [Nurse Simpson] chose to do after looking at her foot was to give her a Band-Aid and alcohol swabs and tell her to stop picking it, you may disagree that that was the right thing to do but he did at least provide some response to her complaints?
>
> A:    Well, I think my criticism in that case would be why didn't he just put the Band-Aid on instead of giving it to her to do?
>
> Q:    Okay.  Any other complaint other than the fact that he gave her the Band-Aid as opposed to putting it on himself?
>
> A:    No.
>
> Q:    All right.  And, again, does that exhaust your criticisms of Nurse Simpson's role involving the medical care given to Ms. Kellerman during her incarceration at the county jail?
>
> A:    Yes, I think so.

As Conklin's deposition testimony makes clear, Nurse Simpson not only actually provided medical care to Kellerman, but did so in a manner that was, at most, below optimal. As we have stated elsewhere in the Eighth Amendment context, on these facts, "it is doubtful that negligence could be proved, much less deliberate indifference." *Clark-Murphy*, 439 F.3d at 291. Even assuming that Simpson's failure to personally put the band-aid on Kellerman's toe was negligent medical care, Kellerman must show more to sustain his Eighth Amendment claim. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.").

Second, Kellerman has also failed to satisfy the subjective component of the deliberate indifference standard. He has not introduced any evidence to suggest that Nurse Simpson was consciously aware that Jamie Kellerman faced an excessive risk to her health. Conklin herself refused to offer an opinion as to what point in time Kellerman developed necrotizing fasciitis, and plaintiff has not identified any evidence in the record showing that Nurse Simpson was aware that Jamie Kellerman had developed fasciitis when Simpson gave her the band-aid. Rather, at the time that Nurse Simpson treated Jamie Kellerman, it appeared as if Kellerman merely had a small, red blister on her toe, and – as plaintiff's own expert, Conklin, concedes – treatment of the blister with a band-aid was reasonable medical care.

Because Kellerman cannot satisfy either the objective or the subjective prong of the deliberate indifference standard, we reverse the district court's denial of Simpson's motion for summary judgment with respect to Kellerman's Eighth Amendment claim.

B.      Nurse Shubnell

The district court's denial of qualified immunity from plaintiff's Eighth Amendment claim to Nurse Shubnell was likewise improper. According to plaintiff, when Jamie Kellerman asked Shubnell to look at her toe on December 3, Shubnell refused, stating "I don't want to look at your nasty foot." When Kellerman returned on December 6, Shubnell noted that redness had spread to the back of Kellerman's leg. Shubnell responded by putting Kellerman on the doctor's call list, which resulted in Dr. Hunt's examination of Kellerman later that day. Shubnell next encountered Kellerman the following morning, when Kellerman's prescribed antibiotic, Augmentin, arrived via overnight mail. Shubnell immediately administered the drug to Kellerman. Nurse Shubnell had no further contact with Jamie Kellerman.

In her expert report, Conklin opined that when Nurse Shubnell examined Jamie Kellerman on December 6, the progression of the redness up Kellerman's leg was a "clear sign of a spreading infection," and Shubnell erred in not bringing this to the physician's attention. At her deposition, Conklin conceded that she was assuming that Shubnell had not contacted Dr. Hunt in response to the spreading redness. Nurse Shubnell testified in her deposition, however, that she did place

Kellerman on the doctor's call list, and Kellerman's medical records support Shubnell's testimony.[1]

Conklin testified as to how this factor would affect her opinion:

> Q: If the evidence in this case were to establish that within a few hours of when Nurse Shubnell made that December 6, 2002 notation that the jail doctor, Dr. Hunt, in fact saw Ms. Kellerman, do you think that that would have been appropriate conduct by Nurse Shubnell?
>
> A: Yes.
>
> Q: Okay. And then to the extent that you have the criticisms in your [report], again, if the evidence establishes that Nurse Shubnell did place Ms. Kellerman on call to see – on doctor's call and Dr. Hunt saw her that day, would you then have any criticisms of Nurse Shubnell's conduct on December 6, 2002?
>
> A: Yeah. I still have the criticisms that there was no documentation that she cleansed the area, dressed it appropriately, took the vital signs to assess if there is a systemic infection at that point. So, yeah, I still have criticism of what she did. Just putting a name on a list doesn't cure anything.

Although Conklin is more critical of Nurse Shubnell's performance, as compared to Nurse Simpson, Nurse Shubnell's medical care fails to rise to the level of a constitutional deprivation. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Moreover, although plaintiff points to Shubnell's alleged statement on December 3 that she "[didn't] want to look at [Kellerman's] nasty foot," Kellerman has also failed to satisfy the subjective

---

[1]No genuine issue of material fact exists on this point, as plaintiff has not alleged, or identified any evidence that suggests, that Shubnell did not place Kellerman on the doctor's call list on December 6.

prong of the deliberate indifference standard as it applies to Nurse Shubnell. Plaintiff has not alleged that Shubnell had actual knowledge that Kellerman faced a serious medical risk and consciously disregarded that risk. Moreover, the evidence in the record suggests the opposite. Nurse Simpson's medical records from December 4 describe Shubnell's blister as a "small red area" at the "base of [Kellerman's] small toe" measuring approximately three millimeters round. It is unlikely that on December 3, Nurse Shubnell drew the inference that Kellerman's blister posed a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. Because plaintiff has not satisfied the subjective prong of the deliberate indifference standard, we reverse the district court's denial of qualified immunity to Shubnell on plaintiff's Eighth Amendment claim.

IV.

Defendants also argue that they are entitled to immunity from Kellerman's state law claims of gross negligence. "Michigan's governmental tort liability act, MICH. COMP. LAWS §§ 691.1401 *et seq.*, provides governmental employees with immunity from tort liability for injuries they cause during the course of their employment so long as the employee's conduct 'does not amount to gross negligence that is the proximate cause of the injury or damage.'" *Livermore*, 476 F.3d at 408 (quoting MICH. COMP. LAWS § 691.1407(2)(c)). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(7)(a); *see also Tarlea v. Crabtree*, 687 N.W.2d 333, 339 (Mich. Ct. App. 2004) (describing gross negligence as "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks"). Evidence of ordinary negligence does not

create a genuine issue of material fact concerning gross negligence. *Maiden v. Rozwood*, 597

N.W.2d 817, 824 (Mich. 1999). Because MICH. COMP. LAWS § 691.1407(7)(a) lacks a requirement

that the defendant be subjectively aware that the plaintiff faces a serious risk of injury, the threshold

for showing gross negligence is less onerous than for establishing deliberate indifference.

A.      Nurse Simpson

We hold that the district court erred in denying governmental immunity to Nurse Simpson

on plaintiff's gross negligence claim. At most, plaintiff's allegations – along with Conklin's expert

report and deposition testimony – suggest that Simpson should have personally put a band-aid on

Kellerman's blister, rather than allow Kellerman to put the band-aid on herself. Even if we were to

generously construe Conklin's testimony as evidence of negligence, "[e]vidence of ordinary

negligence does not create a question of fact regarding gross negligence." *Love v. City of Detroit*,

716 N.W.2d 604, 606 (Mich. Ct. App. 2006) (citing *Maiden*, 597 N.W.2d at 824). Thus, we reverse

the district court's denial of governmental immunity with respect to Nurse Simpson on Kellerman's

claim of gross negligence.

B.      Nurse Shubnell

Kellerman's strongest argument is his state law claim of gross negligence against Nurse

Shubnell, and, in this regard, we hold that the district court correctly denied Shubnell governmental

immunity. Plaintiff's allegations concerning December 3 appear to meet the definition of gross

negligence set forth in MICH. COMP. LAWS § 691.1407(7)(a). If accepted by the trier of fact, Nurse

Shubnell's alleged refusal to inspect Kellerman's open blister, despite Kellerman's complaints of

pain and the possibilities of infection given the jail conditions, may "demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(7)(a); *see also Tarlea*, 687 N.W.2d at 339-40. *Cf. Ford v. Lemire*, No. 03-10176, 2004 U.S. Dist. LEXIS 10611, at \*25 (E.D. Mich. June 1, 2004) (unpublished) (granting defendants prison officials governmental immunity from prisoner's gross negligence claim where plaintiff alleged that defendants delayed in responding to his complaint of a spider bite and reacted inadequately by only providing Tylenol to plaintiff, because "[a]t most the plaintiff's complaint contains allegations of ordinary negligence on the part of these defendants. However, 'evidence of ordinary negligence does not create a material question of fact concerning gross negligence.'"). Accordingly, we hold that a genuine issue of material fact exists regarding whether Nurse Shubnell provided grossly negligent medical care and therefore affirm the district court's denial of Shubnell's motion for summary judgment concerning plaintiff's state law claim.[2]

V.

For the reasons set forth above, we affirm the district court's denial of qualified immunity with respect to Kellerman's state law claim against Shubnell, reverse the district court's denial of qualified immunity with respect to Kellerman's Eighth Amendment claim against Shubnell, and

---

[2]In order to defeat governmental immunity under MICH COMP. LAWS § 691.1407(2)(c), the gross negligence at issue must be "*the* proximate cause" of the plaintiff's injuries. To satisfy this standard, the gross negligence must be "the one most immediate, efficient, and direct cause" preceding the injury. *Robinson v. City of Detroit*, 613 N.W.2d 307, 319 (Mich. 2000); *see also Livermore*, 476 F.3d at 408-09. Defendants, however, did not raise the issue of whether Nurse Shubnell's or Nurse Simpson's treatment was *the* proximate cause of Jamie Kellerman's injuries, and so that issue is not properly before us.

reverse the district court's denial of qualified immunity with respect to Kellerman's state law and Eighth Amendment claims against Simpson.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.