NOT RECOMMENDED FOR PUBLICATION
File Name:  20a0015n.06
CASE NO. 19-1119

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TAMMY KORTHALS, | ) | FILED<br>Jan 13, 2020<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COUNTY of HURON, *et al.*, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| *Defendants-Appellants*. | ) | |
| | ) | |

Before:  BATCHELDER, WHITE, and MURPHY, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  Huron County Deputy Sheriff Bradley Strozeski arrested Tammy Korthals for driving under the influence of alcohol.  Korthals's intoxication was so severe that he took her directly to the hospital and, though the hospital cleared her, she still had evident difficulty walking or maintaining her balance.  Despite this difficulty, when they arrived at the jail, Deputy Strozeski left Korthals's hands cuffed behind her back as he led her from the car, down a hallway, and up two stairs.  This created a risk that she could stumble and, being unable to use her hands to protect herself, suffer a serious injury.  Deputy Strozeski could have reduced that risk by walking behind or alongside Korthals, watching her carefully, and holding onto her for physical assistance or support.  He did none of these and was atop the stairs, about six feet in front of her, when she lost her balance, fell backward from the second step, and hit her head on the floor, suffering severe injuries.

Korthals sued, pursuant to 42 U.S.C. § 1983, claiming that Deputy Strozeski committed a constitutional violation when he allowed her to fall on the stairs and that Huron County's failure to properly train its officers or implement a policy for handling impaired inmates subjected it to

municipal liability for that same violation. The defendants moved for summary judgment based on Deputy Strozeski's assertion of qualified immunity, but the district court denied the motion. *Korthals v. Cty. of Huron*, No. 17-10319, 2019 WL 176722, at *1 (E.D. Mich. Jan. 11, 2019).[1] The district court aptly framed the constitutional right at issue as an arrestee's Fourteenth Amendment right to be free from "a substantial risk of serious harm," *id*. at *2 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018), and *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016)), and properly recited the test as requiring the plaintiff to show both an objective "substantial risk of serious harm . . . [and] that the prison official [subjectively] knew of and [deliberately] disregarded" that risk, *id*. (quoting *Farmer*, 511 U.S. at 837) (quotation marks omitted). The court found that Korthals's evidence could persuade a jury of a substantial risk of serious harm on the stairs due to her extreme intoxication and impaired motor function (balance) while her hands were cuffed behind her back, and that Deputy Strozeski subjectively knew of and deliberately disregarded that risk. *Id*. at *3. In rejecting Deputy Strozeski's claim of qualified immunity, the court held that the particular right under these circumstances—and Deputy Strozeski's violation of that right—were clearly established by *Carroll v. City of Quincy*, 441 F. Supp. 2d 215, 223 (D. Mass. 2006). *Id.*

In this interlocutory appeal, Deputy Strozeski claims the district court erred by denying him qualified immunity.[2] Qualified immunity shields government officials engaged in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The plaintiff suing such an official bears the burden of

---

[1] The court granted summary judgment on Korthals's state-law gross-negligence claim, finding that Deputy Strozeski was not the proximate cause of her injury. *Korthals*, 2019 WL 176722, at *5. Korthals did not appeal.

[2] We have jurisdiction over this interlocutory appeal from the denial of qualified immunity. *See Bunkley v. City of Detroit*, 902 F.3d 552, 560 (6th Cir. 2018). Our review is de novo, accepting Korthals's version of the facts and drawing all reasonable inferences in her favor. *Id.*

overcoming the qualified-immunity defense. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013). At the summary-judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established. *Id.* at 680.

Common sense dictates that Deputy Strozeski should have exercised caution in taking the drunken, unsteady, and handcuffed Korthals up the stairs. We certainly do not condone his failure to do so. It was unreasonable, inexcusable, and, in fact, negligent. But "deliberate indifference entails something more than mere negligence," *Farmer*, 511 U.S. at 835; it means the official actually recognized and then disregarded the risk, *id.* at 837-38. While Korthals has clearly stated a strong negligence case, it is less clear that Deputy Strozeski's failure to use caution was not merely careless, inattentive, or sloppy, but was, instead, a conscious disregard of a recognized risk.[3] Regardless, let us assume, arguendo, that Deputy Strozeski *was* deliberately indifferent to the risk and that he violated Korthals's constitutional right to be free from that risk.

The determinative question becomes whether that right was "clearly established," so as to overcome qualified immunity. *See Harlow*, 457 U.S. at 818. There are two aspects to qualified immunity's "clearly established" element that the district court overlooked or misunderstood. The first is that, "to determine if the law is clearly established . . . , we look principally to the law of this circuit and to the Supreme Court." *Perez v. Oakland Cty.*, 466 F.3d 416, 427 (6th Cir. 2006); *Coley v. Lucas Cty.*, 799 F.3d 530, 540 (6th Cir. 2015). The district court relied on a single case from the District of Massachusetts. As a general principle, it is doubtful that decisions from out-

---

[3] It is possible that even this ordinary application of deliberate indifference might not apply to the present circumstances, given *Farmer*'s admonition against the use of the deliberate-indifference theory in excessive force cases, asserting that "where the decisions of prison officials are typically made in haste, under pressure, and frequently without the luxury of a second chance, [the plaintiff] must show more than indifference, deliberate or otherwise. The [plaintiff] must show that officials [acted] maliciously and sadistically for the very purpose of causing harm or . . . that officials [acted] with a knowing willingness that harm occur." *Farmer*, 511 U.S. at 835-36 (editorial marks, quotation marks, and citations omitted.). This case is not about an excessive-force incident, but an argument could be mad that the challenged conduct was "made in haste, under pressure, and [] without the luxury of" contemplation or a reasoned decision. Therefore, under this reasoning, the deliberate-indifference analysis might be inapt.

of-circuit district courts carry such authority. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). But even assuming that decisions from such other courts can provide "clearly established law," we have explained that, to do so, such "decisions must both [1] point unmistakably to the unconstitutionality of the conduct complained of and [2] be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable [official] that his conduct, *if challenged on constitutional grounds*, would be found wanting." *Barber v. Miller*, 809 F.3d 840, 846-47 (6th Cir. 2015) (emphasis added). The second noteworthy aspect is that "[c]learly established law is not defined at a high level of generality but must be particularized to the facts of the case." *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019) (quotation marks omitted). The Supreme Court has emphasized:

> [T]he legal principle [must] clearly prohibit the offic[ial]'s conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. . . . [C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the offic[ial]'s conduct does not follow immediately from the conclusion that the rule was firmly established.

*District of Columbia v. Wesby*, 583 U.S. --, 138 S. Ct. 577, 590 (2018) (quotation and editorial marks omitted). "The dispositive inquiry, undertaken in light of the specific context of the case, and not as a broad general proposition, is whether the violative nature of *particular* conduct [wa]s clearly established." *Sumpter v. Wayne Cty.*, 868 F.3d 473, 485 (6th Cir. 2017) (quotation and editorial marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. --, 136 S. Ct. 305, 308 (2015)).

As mentioned, the district court relied exclusively on *Carroll v. City of Quincy*, 441 F. Supp. 2d 215 (D. Mass. 2006). In *Carroll*, the officers knew that the arrestee was intoxicated, "unsteady on his feet[,] and had difficulty walking without assistance," but they "placed [him] in a holding area while he waited to be booked," with "his hands [] handcuffed behind his back." *Id*.

4

at 218. When the officers called him out of the cell to be booked, he fell backwards and hit his head on the floor, suffering injury. *Id.* The court held that "the decision to place him in a holding area with his hands cuffed behind his back put him in a situation where there was a substantial risk of harm," *id.* at 221, and it found evidence that the officers were aware of the risk, *id.* at 222, but failed to respond reasonably, in "that they took no precautionary measures," *id.* at 223, so the court concluded that a jury could find deliberate indifference. The court also found that, while "it was the usual practice to put an inebriated arrestee in a cell until such time as the arrestee sobered up and could be booked . . . , in the majority of such cases, the cuffs would be taken off the arrestee unless he or she was acting violently." *Id.* The court did not opine about any other precautionary measures. In denying qualified immunity, the Massachusetts district court said that an arrestee's right to be protected from a substantial risk of serious harm was clearly established because "[c]onduct that is deliberately indifferent to an excessive risk to [an arrestee] cannot be objectively reasonable conduct" and, therefore, "a reasonable officer could not believe that his actions comported with clearly established law." *Id.* In essence then, the court held that deliberate indifference alone is enough to show that the right was clearly established.

It is doubtful that this circular reasoning is a correct statement or application of the law, making it likely that this opinion is simply wrong (and oft ignored for good reason[4]), but even if *Carroll* were correct, it fits only at the "high level of generality" that is clearly improper. *See Vanderhoef*, 938 F.3d at 278. While the predicate facts are certainly on point with the present case (e.g., a drunken and wobbly arrestee, hands cuffed behind his back, left unattended, and fell, suffering seriously injuring), *Carroll* did not describe the right with particularity or explain

---

[4] *Carroll* had theretofore been cited a total of 13 times in 13 years and only once for the same substantive proposition asserted here. *See Podgurski v. Dep't of Corr.*, No. 13-11751, 2014 WL 4772218, at *7 (D. Mass. Sept. 23, 2014) (quoting *Carroll*, 441 F. Supp. 2d at 223, as stating: "Conduct that is deliberately indifferent to an excessive risk to [an inmate] cannot be objectively reasonable conduct.").

precisely how the officers' actions violated that right. Plainly, the general right is the arrestee's right to protection, by reasonable measures, from a recognized substantial risk of serious harm. That is the general right in *every* inmate-at-risk case. Read closely, *Carroll* suggests that the officers violated that general right by leaving the arrestee handcuffed in the holding cell, drunk and unattended, making the right, as "particularized to the facts of the case," an arrestee's right to be uncuffed when placed in a holding cell, drunk and unattended. That is certainly not the right Korthals claims in the present case, nor would it appear supportable in the present circumstances, given that an arrestee's being uncuffed during transit from the car to booking is different from an arrestee's being uncuffed in a confined holding cell. *See*, *e.g.*, *Schack v. City of Taylor*, 177 F. App'x 469, 472-73 (6th Cir. 2006) (placing a highly intoxicated arrestee in a holding cell was not deliberately indifferent). Regardless, Korthals's claim is that Deputy Strozeski violated the general right by walking in front of her (rather than behind or alongside her), failing to watch her carefully for a trip or stumble, and offering her no physical assistance or support—making the "particularized" constitutional right the right to be closely guided, intently watched, and physically supported when walked from the car to booking, drunk and physically wobbly. Nothing in *Carroll* suggests the existence of such a constitutional right or that Deputy Strozeski necessarily violated such a right by failing to undertake those particular precautions. That is, *Carroll* would not forewarn Deputy Strozeski that, by walking in front of the drunken, wobbly, and handcuffed Korthals, without watching or holding onto her, he was necessarily—or even likely—violating the Constitution. To finish the point, if Deputy Strozeski *had* undertaken those precautions but Korthals had fallen anyway, she could have framed the alleged right differently, so as to fit that different scenario, perhaps as a constitutional right to a wheelchair in those circumstances. This exemplifies the concern with describing the right at a "high level of generality"; it "avoids the

6

crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590.

The decisive questions about the *Carroll* precedent, however, would be (1) whether it "point[s] unmistakably to the unconstitutionality of" Deputy Strozeski's conduct, and (2) whether it was "so clearly foreshadowed by applicable direct authority" that Deputy Strozeski would have "no doubt" that his conduct was unconstitutional. *See Barber*, 809 F.3d at 846-47. In short, the answer to both is no: *Carroll* does not show unmistakably that Deputy Strozeski's conduct was unconstitutional, nor was it "foreshadowed by applicable direct authority." Therefore, as a district court case from within another Circuit, *Carroll* is not clearly established law. *Id.*

The district court also cited two Sixth Circuit cases in reference to the *Farmer* test, which warrant mention because each of them *does* state some clearly established right as "particularized to the facts of th[ose] case[s]." In *Richko*, 819 F.3d at 915, we said: "The constitutional right at issue in this case—Horvath's right to be free from violence at the hands of other inmates—was clearly established by the Supreme Court in *Farmer* []." And in *Richmond*, 885 F.3d at 948, we said: "Thus, it was clearly established at the time of Richmond's incarceration in Wayne County Jail that neglecting to provide a prisoner with needed medication, intentionally scrubbing her wound to cause unnecessary pain, and failing implement the prescribed plan of treatment could constitute a constitutional violation." Both statements, which define very different particularized rights, fall equally within the *general* rule of an inmate's or arrestee's right to be protected, by reasonable measures, from a recognized substantial risk of serious harm. As the Supreme Court has explained, this level of "specificity" is necessary to make it "clear to a reasonable officer" whether "his conduct was unlawful in the situation he confronted." *Wesby*, 138 S. Ct. at 590.

Korthals's contention is that Deputy Strozeski violated her constitutional right to be protected from a substantial risk of serious harm because he failed to walk behind or alongside

her, failed to watch her carefully for a stumble or fall, and failed to hold her or provide physical support when she attempted to mount the stairs, drunk and physically wobbly. "The dispositive inquiry . . . is whether the violative nature of [that] *particular* conduct [wa]s clearly established." *Sumpter*, 868 F.3d at 485. Korthals has pointed us to no clearly established precedent from the Supreme Court or this Circuit to support that contention, and the cited out-of-circuit district court case (*Carroll*) does not qualify as clearly established law. Even if Deputy Strozeski's failure to exercise caution when taking the drunken and handcuffed Korthals up the stairs were not merely negligent, but deliberately indifferent, such that it rose to the level of a constitutional violation, we cannot conclude that the constitutional impropriety of that particular conduct was clearly established.

Deputy Strozeski is entitled to qualified immunity on this claim. Consequently, we REVERSE the portion of the district court's order in which it denied Deputy Strozeski's claim of qualified immunity and REMAND for entry of judgment consistent with this opinion.

The district court denied Huron County's motion for summary judgment because Korthals had "raised a genuine issue of material fact regarding Huron County's liability." *Korthals*, 2019 WL 176722, at *4. Huron County attempts to appeal that decision, but such a routine denial of a motion for summary judgment is not an appealable final order under 28 U.S.C. § 1291. Nor can Huron County establish "pendent appellate jurisdiction," which requires that the challenge be "inextricably intertwined" with the collateral (qualified-immunity) analysis properly before us; "in other words, only when the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well." *Hopper v. Plummer*, 887 F.3d 744, 760-61 (6th Cir. 2018) (quotation marks omitted). Our resolution of Deputy Strozeski's qualified-immunity appeal does not necessarily resolve the municipal liability claim against Huron County. Therefore, we lack jurisdiction and must DISMISS Huron County's interlocutory appeal.

8

**HELENE N. WHITE, Circuit Judge, concurring.** I write separately because, although I agree that we must reverse as to Deputy Strozeski, I am not in complete agreement with the majority opinion.

The majority suggests in footnote 3 that *Farmer*'s deliberate indifference standard may not apply in this case in light of the Supreme Court's recognition of a more demanding malicious/sadistic/willing-harm test in Eighth Amendment excessive force claims against prison officials whose decisions "are typically made in haste, under pressure, and frequently without the luxury of a second chance." *Farmer v Brennan*, 511 U.S. 825, 835-36 (1994) (quotations and citations omitted). I do not agree that Deputy Strozeski's situation is comparable to that of a prison official acting in haste and under pressure. Deputy Strozeski was under no immediate pressure and had hours to consider the appropriate means of escorting Korthals into the booking area.

As to the question of qualified immunity, I agree that Deputy Strozeski's conduct, while surely negligent, likely did not rise to the level of conscious disregard of a substantial risk of serious harm. And I agree that even assuming it did, Korthals has not shown that Strozeski's actions violated her clearly established constitutional rights. I do not agree, however, with my colleagues' characterization of Korthals's asserted constitutional right as a "right to be closely guided, intently watched, and physically supported when walked from the car to booking, drunk and physically wobbly," (Maj. Op. at 6.), because precedent does not require a plaintiff to define her constitutional right so exactly. Although "[a] plaintiff can meet [her] burden . . . by presenting caselaw 'with a fact pattern similar enough to have given "fair and clear warning to officers" about what the law requires,' [t]hat case 'need not be on all fours' with the instant fact pattern to form the basis of a clearly established right." *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019) (quoting *Hopper v. Plummer*, 887 F.3d 744, 755 (6th Cir. 2018)). "And 'an action's unlawfulness can be "clearly established" from direct holdings, from specific examples describing certain

conduct as prohibited *or from the general reasoning that a court employs*." *Id.* at 279 (quoting *Baynes v. Cleland*, 799 F.3d 600, 612 (6th Cir. 2015)) (emphasis added). Thus, Korthals could have met her burden by relying on case law establishing the right of intoxicated detainees to be free from conditions similar—though not identical—to those surrounding her own fall and injury.

That said, Korthals has not identified such precedent. Only one case from this court, *Schack v. City of Taylor*, involved facts similar to those here—facts describing conditions of confinement that increased the risk that an intoxicated detainee would be injured in a fall. 177 F. App'x 469 (6th Cir. 2006). In *Schack*, the plaintiff was arrested while drunk and placed in a concrete detoxification cell. *Id.* at 472. When the plaintiff stood up, he fell to the concrete floor and sustained serious injuries. *Id.* We found no constitutional violation, concluding that although leaving an intoxicated person sitting in a cell while awaiting booking may increase the risk of harm due to falling, it does not create a substantial risk of serious harm. *Id.* at 472-73. We did not speculate regarding what, if any, additional conditions of confinement would have elevated the risk to the plaintiff to a level that would violate contemporary standards of decency. *See id.* Thus, *Schack* did not establish law that would have given Strozeski clear notice that his actions violated the Fourteenth Amendment. And, for the reasons stated in the majority opinion, *Carroll v. City of Quincy*, 441 F. Supp. 2d 215 (D. Mass. 2006), provides inadequate support for Korthals's claim.